**IN RE TUNSTALL, et**

Common Pleas Court, Cuyahoga Co

Decided April 14, 1939

Walter I. Krewson, Cleveland, for complainants.

Robert J. Selzer, Cleveland, for respondents.

## OPINION

By HURD, J.

This case comes before this court at this time upon the motion of the respondents for an order requiring the complainants to elect, and to make their petition for removal definite and certain in forty-four particular respects set forth in the motion at some considerable length.

In order that there may be a clear understanding of the rulings made herein it should be stated that this is a petition for removal of the respondents as members of the board of education of the Parma School District, brought under favor of §§10-1 and 10-2, GC, and kindred sections of the General Code.

The petition for removal which is in the form of 32 separate printed complaints, identical in form and substance, bound together as one document, alleged to be signed by ten per cent or more of the qualified registered electors of The Parma City School District represents that the respondents as members of said board of education are guilty of gross neglect of duty and of misfeasance, malfeasance

and nonfeasance in office in six respects, as follows:

"(1) That after said members had appropriated tax moneys and revenues for the year 1937, said appropriated items were knowingly and wilfully disregarded by said members. The total amount appropriated for the general fund was $173,743.73, whereas the total expenditures of money, contracts and orders incurred was $235,051.81, an excess of $61,308.08 over the appropriation; contrary to the form of §5625-33, GC, and the laws of the state of Ohio in such case made and provided.

"(2) That appropriations in the year 1937 were disregarded; that said appropriations were overdrawn; and, effective April 12, 1937, notwithstanding said overdrawn appropriations and that there were insufficient funds on hand to pay employees when their respective salaries became due, March 5, 1937, March 19, 1937 and April 9, 1937, an increase in pay was awarded certain employees and teachers by said members.

"(3) That said members knowingly exceeded the amount appropriated for the general fund for the year 1936 in the amount of $1,555.69, being the difference between the total appropriation of $240,091.00 and expenditures of money, contracts and orders incurred in the amount of $241,646.69.

"(4) That under date of May 13, 1936, Frank S. Shields was employed as superintendent for the school years commencing August 1, 1936 and ending July 31, 1939; and, that thereafter said members unlawfully, purposely, knowingly and wilfully increased the salary of said superintendent, during the term for which he was employed in the amount of $641.63, contrary to the laws of the state of Ohio.

"(5) That said members knowingly, wilfully and contrary to §7623, GC, failed to advertise for bids or declare an emergency after said members had determined to build, repair, enlarge, furnish or make improvements to school houses and building under their jurisdiction and control, when they knew, or ought to have known, that the amount of said building repair, enlargement, furnishings or improvements would exceed the sum of $3,000.00.

"(6) That said members wilfully, knowingly, and contrary to §5625-33, GC, made expenditures of moneys when said moneys had not been appropriated and contrary to the certificate of their fiscal officer."

Sections 10-1 and 10-2, GC, under and by virtue of which this action is brought, provide as follows:

"Sec. 10-1. Providing for Forfeiture for Misconduct in Office.—

"That any person holding office in this state, or in any municipality, county or any subdivision thereof, coming within the official classification in section 38, article 2, of the constitution of the state of Ohio, who wilfully and flagrantly exercises authority or power not authorized by law, refuses or wilfully neglects to enforce the law, or to perform any official duty now or hereafter imposed upon him by law, or who is guilty of gross neglect of duty, gross immorality, drunkenness, misfeasance, malfeasance or nonfeasance, shall be deemed guilty of misconduct in office; upon complaint and hearing in the manner provided for herein shall have judgment of forfeiture of said office with all its emoluments entered thereon against him, creating thereby in said office a vacancy to be filled as prescribed by law. The proceedings provided for in this act are in addition to impeachment and other methods of removal now authorized by law, and this act shall not in any way be so interpreted as to divest the governor or any other authority of the jurisdiction now given in removal proceedings. (111 v 264; 103 v 851; 1, Eff. July 16, 1925.)"

"Sec. 10-2. Procedure for Removal of Public Officers.—

"Proceedings for the removal of public officers on any of the grounds enumerated in the preceding section shall be commenced by the filing of a written or printed complaint specifically setting forth the charge and signed by ten per cent of the qualified and registered electors in political subdivisions or units of government where registration for election is required, and qualified electors in political subdivisions or units of government where registration is not required, as shown by the next preceding general election or the political subdivision or unit of government whose officer is sought to be removed, but not to exceed 60,000 signatures in the case of state officers, and not to exceed 25,000 signatures in the case of officials of a county, district or other political subdivision. Such complaint shall be filed with the Common Pleas Court of the county wherein the officer against whom the complaint is filed resides, except that when the officer against whom the complaint is filed is a common pleas judge, such complaint may be filed in the Court of Appeals of the district where such judge

resides, and all complaints against state officers may be filed with the Court of Appeals in the district wherein the officer against whom the complaint is filed resides. The judge or clerk of the court shall cause a copy of such complaint to be served upon the officer, against whom the complaint has been filed, at least ten days before the hearing. The hearing herein provided for shall be had within thirty days from the date of the filing of the complaint by said electors. The proceedings had by the court upon such removal shall be matters of public record and a full detailed statement of the reasons for such removal shall be filed with the clerk of the court, and shall be made a matter of public record therein. (115 v 405; 112 v 177; 111 v 264; 103 v 851, 2 Eff. Oct. 3, 1933.)"

Considering first, the motion of the respondents requiring the complainants to elect "as to whether or not they claim these defendants were guilty of gross neglect of duty, of misfeasance, malfeasance or nonfeasance in office" we are of the opinion that this motion should be overruled.

It would appear to us that the provisions of §10-1, GC, are so broad and so all inclusive as to include the elements of gross neglect of duty, misfeasance, malfeasance or nonfeasance in office. We need only to point to the words of the statute in substantiation of this conclusion:

" * * * who (referring to a public officer) wilfully and flagrantly exercises authority or power not authorized by law, refuses or wilfully neglects to enforce the law, or to perform any official duty now or hereafter imposed upon him by law, or who is guilty of gross neglect of duty, gross immorality, drunkenness, misfeasance, malfeasance or nonfeasance, shall be deemed guilty of misconduct in office; * * * ."

Therefore the motion to require the respondents to elect is overruled and exceptions may be noted.

Coming now to a consideration of the motion to make more definite and certain, a problem is presented which requires more serious consideration.

Voluminous briefs have been filed by counsel representing the respective parties to this proceeding. The question is raised as to whether or not this is in the nature of a judicial proceeding.

Our conclusion in respect of this question is that this is a judicial proceeding.

The authority for this proposition may be found in the case entitled **In Re Bostwick, 125 Oh St 182,** wherein the following language is used by the Supreme Court:

"During our consideration of this case the Chief Justice advanced the contention that the removal of a public officer is a political question; and that therefore the decision of the Common Please Court removing Judge Bostwick is final and not judicially reviewable. **That this was not the legislative purpose is clear,** for none of the removal statutes stipulate that the decision of the Common Pleas Court shall be final, but they do stipulate that its decision may be reviewable upon error. Such conclusion, that the decision of the Common Pleas Court is final, is not advanced by counsel for either side; not by counsel Bostwick, for he invoked the jurisdiction of the Court of Appeals and of this court; nor is it advanced by counsel for the other side, for he expressly and in open court disavowed any such claim:" (Emphasis ours.)

This case is again cited with approval by the Supreme Court in the case entitled, **In Re Sulzman, 125 Oh St 594.**

It is also certain that the respondents are entitled to due process of law. Sec. 38, Article 2 of the Ohio Constitution, as adopted in 1912, reads as follows:

"Laws shall be passel providing for the prompt removal from office, upon complaint and hearing of all officers, including state officers, judges and members of the gerenal assembly, for any misconduct involving moral turpitude or for any other cause provided by law; and this method of removal shall be in addition to impeachment or other method of removal authorized by the constitution."

A reading of the opinion of Justice Wanamaker concurred in by all of the members of the Supreme Court in the case of **State ex Boel, Prosecuting Attorney v Brown,** reported in **105 Oh St 479,** is very illuminating and instructive on this point.

While the case of **State ex rel v Brown, supra,** is not directly in point, because that case involved a county officer by the county commissioners, without granting to him the privilege of complaint and hearing as provided by §§10-1 and 10-2, GC, under the authority of §38, Art. 2 of the Constitution, nevertheless much that is said by Justice Wanamaker in his opinion has application to the proposition of the right of the respondents in this case to a judicial proceeding according to settled procedure upon complaint and hearing.

Some excerpts from this opinion which are pertinent to the question under consideration are as follows:

"Probably no other phrase known to the American and English law comprehends so much basically vital in the protection of human rights and the redress of human wrongs as the phrase 'due process of law.' Exact definitition within lineal limits has not yet been attempted; but the old constitutional provisions, federal and state, that no person shall be deprived of life, liberty or property without due process of law, are the most essential guarantee of the security of our liberties and the stability of our law.

"Various definitions have from time to time been announced: 'Due process of law' in each particular case means such an exertion of the powers of government as the settled maxims of the law permit and sanction, and under such safeguards for the protection of individual rights as those maxims prescribe for the class of cases to which the one in question belongs. (8 Cyc., 1080, and cases cited.) In the celebrated Dartmouth College case, more than a century ago, the immortal Webster, than whom there probably has not been a greater constitutional lawyer, contended in his brief that this primary and paramount phrase of our law should be defined as follows:

" 'By the law of the land is most clearly intended the general law; a law, which hears before it condemns; which proceeds upon inquiry, and renders judgment only after trial. The meaning is that every citizen shall hold his lite, liberty, property and immunities, under the protection of the general rules which govern society.'

"Various other definitions have been from time to time announced from various courts and writers, as follows:

" 'A trial according to some settled course of proceeding.'

" 'Judicial proceedings according to the courts and usage of the common law.'

" 'A trial by court of justice, according to the regular and established course of judicial proceedings.'

" 'Process due according to the law of the land.'

" 'Some legal procedure in which the person proceeded against it he is to be

concluded thereby, shall have an opportunity to defend himself.'

"These several definitions, agreeing in all essential particulars, are such as the court of reason and conscience would sanction as the very A.B.C. of simple and substantial justice. All constitutions and laws known to us Americans must be interpreted and applied with due regard for this cornerstone of every commonwealth. Whether or not it be expressly written into our constitutional and statutory provisions, it is to all essential purposes there, by the clearest intendment and implication.

"Probably no more representative body of the spirit of humanity and justice characterizing the 20th century ever assembled in Ohio than the Constitutional Convention of 1912. It placed a new interpretation, new extensions and new limitations upon this phrase 'due process of law'."

Another proposition of law well settled is that removal statutes are to be strictly construed and before the court may grant such a petition for removal of an official the evidence must be clear and convincing.

See case In Re Edwin W. Diehl, Judge, 47 Oh Ap 17, 189 N. E., 155; decided by the Court of Appeals of Stark County in 1933; affirmed, 128 Oh St 212; 189 N. E. 567.

Another proposition of law which follows logically from the proposition that the respondents are entitled to due process of law is that the complaint must be definite and certain so as reasonably to apprise an officer charged with misfeasance, malfeasance, nonfeasance, and gross neglect of duty of the nature of the charge against him, so that he may be prepared properly to meet these charges. Indeed, the statute, §10-2 providing for the removal of public officers, contains the statement that the complaint must be specific, the wording being as follows:

" * * * by the filing of a written or printed complaint specifically setting forth the charges and signed by ten per cent of the qualified and registered electors * * * ."

Regular judicial proceedings which must perforce insure due process of law can not contemplate that parties be required to respond to charges of wilful violation of duty which do not reasonably inform the parties charged specifically as to what the charge or charges may be in such a manner as to afford them a reasonable opportunity of knowing and being able to prepare the defense to such charges prior to the hearing there on.

From all of the foregoing we reach the conclusion that it is the duty of the court upon motion to determine whether or not the complaint is definite and certain even though the statutes are in the nature of special proceedings for the special purpose of the removal of public officers.

Having reached this conclusion we are confronted with a practical difficulty and that is if it is found that the complaint is not definite and certain and is not specific as to any one or more particulars charged, the effect of granting a motion to make definite and certain and specific is to nullify the charges for the reason that under the statutes the petition for removal must be signed by ten per cent or more of the electors of the district in which the removal is sought which would require a recirculation of the petitions for removal. In our opinion this would of necessity require a new action. In order to obviate the necessity of such procedure counsel for respondents in his brief has in effect agreed to waive the recirculation of petitions by stating that in the event the court should grant an order in favor of the respondents the court may grant the order in such manner and form as to permit the complainants to amend by interlineation. It would appear that counsel for respondents has not the authority under the law to make such a waiver on behalf of the respondents and that the court should not permit amendment by interlineation for the reason that the petition having been signed by ten per cent or more of the qualified electors should not be controlled by any particular person or group of persons. In other words, the signers to the petition are the only persons authorized under the law to make and bring the charges and we are quite certain that no person or persons can be authorized or delegated by them to change or amend the charges. Hence, we have reached the conclusion that where charges are not specific and are indefinite and uncertain the same should be dismissed in order that the respondents may not be deprived of their right to the due process of law.

Having thus discussed the legal principles which we believe to be applicable we come now to a consideration of the charges which are made in order to de-

termine whether or not the same are specific as required by law.

Several requests of the respondents are directed to the proposition that not all the members of the school board of which the respondents are members have been made parties to this action. In this connection they ask that the complaint be made definite and certain as to whether or not other members of the school board in addition to these respondents participated in the actions of which complaint is made. We have reached the conclusion that this and similar requests of the respondents involving other members of the school board are not well founded. It would appear to us that it is entirely immaterial and irrelevant so far as the issues here presented are concerned.

Therefore we are dismissing from our consideration entirely any such claims in respect of the motion to make definite and certain.

After careful consideration we are of the opinion that charges one, two, three and four are sufficiently definite and certain and sufficiently specific to apprise the respondents of the specific acts with which they are charged under the statutes.

Allegations one, two and three charge that defendants wilfully expended moneys, in excess of moneys actually appropriated for expenditure, and definite sums of money are stated, and the section of the General Code which is claimed to be violated is set forth.

It is further charged that appropriations in the year 1937 were disregarded, that said appropriations were overdrawn and that when there were insufficient funds on hand to pay employees when the respective salaries became due, an increase of pay was awarded to certain employees and teachers by said members, contrary to law, and that said members knowingly exceeded the amount appropriated for the general fund for the year 1936, and definite sums of money are set forth; that the salary of the superintendent was increased, contrary to law, during the term for which he was employed, and the amount thereof is stated definitely.

We are not at this time passing upon the merits of these charges, but we do reach the conclusion that they are sufficiently definite and certain and specific, and that, therefore, the motion to make the same more definite and certain should be overruled.

Upon an analysis of allegations five and six, we reach a contrary decision.

Allegations five and six are entirely general in their content. They may involve one act or many acts. They refer to the building, repairing, enlarging, furnishing and making of improvements to schoolhouses and buildings under their jurisdiction and control. Quite obviously, this in indefinite. There is no statement as to which building or buildings are referred to in the awards of contracts for improvements, nor is there anything setting forth the circumstances of the awarding of said contracts, nor as to when they were awarded nor as to whom they were awarded nor as to the amounts of said awards.

As we analyze the allegations, five and six, they are purely blanket allegations under which the persons prosecuting the action would be free to select any one or possibly many activities in connection therewith. These allegations certainly are not specific and do not inform the respondents specifically of any definite acts charged against them. We are, therefore, of the opinion that the motion with respect to allegations five and six is well taken and that these allegations are not definite and certain or specific as required by law.

We have stated hereinbefore that granting such a motion is tantamount to a dismissal of the charges numbered five and six in the form presented. As before stated there is no statutory procedure provided for an amendment of this complaint, nor can charges be proceeded upon unless the same are specific and signed by the requisite number of electors. We reach the conclusion, therefore, that in granting the motion to make more definite and certain that the only procedure to be followed under the processes of law and equity and under the constitution is to dismiss these charges which are not specific and definite and certain without prejudice to a future action which may be brought, making the charges specific and definite and certain as contemplated by law.

The order of the court, therefore, will be that the motion to make definite and certain will be granted in part and overruled in part, that it is overruled as to charges one, two, three and four, upon which the respondents shall be required to proceed to trial; that it is granted as to charges five, and six, and that said charges five and six are dismissed without prejudice to a future action.

A journal entry may be drawn in accordance herewith and exceptions may be noted for all proper parties.