**LEACH, In Re, Removal of**

Common Pleas Court, Jackson Co.

No. 11300. Decided June 11, 1940.

Thomas H. Monger, Jackson, for defendant.

Harry B. Reese, Wellston, and Charles M. Hogan, Wellston, for complainants.

## OPINION

By EVERETT, J.

This is an action brought for the purpose of removing Dallas Leach from his office as a member of the Board of Education, Washington Township Rural School District, Jackson County, Ohio. The complaint is filed by sixty-eight qualified electors of Washington Township Rural School District and alleges that Dallas Leach, a duly elected, qualified and acting member of the Board of Education of said school district has been and now is guilty of misconduct in office by reason of gross neglect of duty, misfeasance, malfeasance, and nonfeasance. The complaint contains two grounds, the first of which is, that Dallas Leach while holding said office had and continues to have a pecuniary interest in a certain contract executed in 1939 for the furnishing of coal to the Board of Education by and between one Ross Arnold and the Board of Education in that a great quantity of coal

furnished thereunder was taken for a valuable consideration moving in whole or in part to the said Dallas Leach from a certain mine of which the said Dallas Leach was the owner and of which the said Ross Arnold was lessee or operator, and that the rest of the coal furnished thereunder was taken for a valuable consideration moving in whole or in part to said Dallas Leach from another mine of which Dallas Leach and one Frank Hollberg were and continue to be the operators.

The second ground of complaint is, that said Dallas Leach while holding said office had and continues to have a pecuniary interest in a certain contract executed and continuing in force during the term of his office for the employment of a janitor for said Board of Education by and between Franklin Leach and the Board of Education in that said employee was and continues to be a minor son of said Dallas Leach of the age of seventeen years.

This action by the complainants is brought under favor of §10-1 GC, which provided in part as follows:

"That any person holding office in this state, or in any municipality, county, or any subdivision thereof, coming within the official classification in Sec. 38, Art. II, of the Constitution of the State of Ohio, who willfully and flagrantly exercises authority or power not authorized by law, refuses or willfully neglects to enforce the law, or to perform any official duty now or hereafter imposed upon him by law, or who is guilty of gross neglect of duty, gross immorality, drunkenness, misfeasance, malfeasance, or nonfeasance, shall be deemed guilty of misconduct in office; upon complaint and hearing in the manner provided for herein shall have judgment of forfeiture of said office with all its emoluments entered thereon against him, creating thereby in said office a vacancy to be filled as prescribed by law."

Sec. 10-2 GC provides the procedure for removal of public officers.

The terms of §10-1 GC make it applicable to all offices in the state or in any municipality, county or subdivision thereof, and thus it is clear that a member of the Board of █ Education may be removed from office under this statute if the evidence is sufficient to show him guilty of any of the grounds for removal stated therein.

The evidence under the first ground of complaint discloses that Dallas Leach was a member of the Board of Education of Washington Township Rural School District, Jackson County, Ohio, during the years 1939 and 1940, up until the time of the filing of the complaint. That sometime in 1939 the Board of Education had bids submitted for furnishing coal for the school building; that several bids were submitted, and Ross Arnold was awarded the contract to furnish coal at $2.65 a ton. That the defendant, Dallas Leach, along with the other members of the Board, voted in favor of Ross Arnold having said contract. That Dallas Leach and Frank Hollberg had been operating a mine in partnership for about fourteen years on land owned by them in Vinton County, Ohio, and that there was an old abandoned mine on said premises and also a mine from which coal was being run by Leach and Hollberg at the times mentioned in the complaint. The evidence further showed that Ross Arnold had previously worked for Leach and Hollberg before entering into the contract with the Board of Education, the employment terminating quite some time prior to the contract. That Frank Hollberg was one of the signers on the bond which Arnold furnished to the Board of Education under said contract.

That about forty tons of coal were taken from the old abandoned mine on the Leach and Hollberg property and that about fifty tons were purchased by Arnold from the mine operated by Leach and Hollberg at $1.75 per ton, and furnished to the school house under Arnold's contract. The evidence further showed that Dallas Leach helped to load some of the coal, weighed some of it, and made out some of the weigh slips and signed Arnold's name thereto; also, that he helped to unload some of the coal at the schoolhouse.

The evidence relative to the abandoned mine disclosed that Leach and Hollberg permitted Arnold to go in and remove the pillars left standing if he would prop the mine up with posts as the pillars were taken away, and that he did not pay any money consideration for this coal. The evidence further disclosed that Arnold paid sixty-five cents a ton to Raymond Patterson for hauling the coal and that he paid Leach and Hollberg for the coal he obtained at their mine as he purchased it. The evidence further discloses that when Patterson obtained coal for his home use and started to pay for it defendant said, "Let it go on the school-house hauling until we settle." Also, Patterson received a note through a Mrs. Young which acknowledged Leach and Hollberg owed him $2.00.

There were a number of exhibits introduced which consisted of minutes of the meetings of the Board of Education and weigh slips for the coal and also bills to the Board of Education for the coal. The defendant would not say whether the writing on the exhibits was his or not, but a comparison of the exhibits with his handwriting introduced in evidence at the trial tends to show that a number of the weigh slips were made by the defendant and that the bills for the coal to the township appeared to be in his handwriting but signed by Arnold.

With reference to the second ground of complaint the evidence disclosed that Franklin Leach, a minor son of Dallas Leach, applied to the Board of Education for a job as janitor and was hired by the Board of Education, Dallas Leach not participating in the vote. The evidence further disclosed that Franklin Leach resided at home with his father and did not pay board, but that Dallas Leach furnished him food and lodging, and that Franklin Leach used his money as he saw fit. That Dallas Leach asserted no control over the son's expenditure of the money he received and did not urge him to make an application for the job. The evidence does disclose, however, that Dallas Leach talked to one or two members of the Board and told them that his son

had made an application, but he denies any attempt to influence the other members of the Board to hire his son. Counsel for Dallas Leach in argument admitted that the son was not emancipated, but contended that Dallas Leach had no interest in the contract because he did not in fact receive any of the money paid to his son.

After the complaint was filed on preliminary hearing thereof Dallas Leach was suspended as a member of the Board of Education until final hearing under the provisions of §10-3 GC.

The issues raised by the two grounds of the complaint and the evidence are, whether or not Dallas Leach had a pecuniary interest in the coal contract between Ross Arnold and the Board of Education, and whether he had a pecuniary interest in the contract between his minor son and the Board of Education for employment as a janitor. Further, whether or not this pecuniary interest, if any, constituted gross neglect of duty, nonfeasance, misfeasance or malfeasance, within the purview of §10-1 GC.

Statutes for the removal of public officers are to be strictly construed and before the court may grant a petition for the removal of an official the evidence of the acts and grounds for removal must be clear and convincing. **In re Tunstall et, 28 Abs 635; In re Diehl 47 Oh Ap 17, affirmed in 128 Oh St 212.**

The complaint, in both grounds thereof, charged the defendant with gross neglect of duty, misfeasance, malfeasance, and nonfeasance. Nonfeasance is defined as an omission to perform a required duty at all, or a total neglect of duty. Misfeasance has been defined as a default in an officer in not doing a lawful act in a proper manner, or omitting to do it as it should be done. Malfeasance is the doing of an act wholly unlawful and wrongful. See **32 O. Jur. page 965, §107** and authorities cited thereunder.

Secs. 4757, 12910, and 12911 GC relate to officers having a pecuniary interest in a contract. Sec. 4757 relates

specifically to Boards of Education and is as follows:

"Conveyances made by a Board of Education shall be executed by the president and clerk thereof. No member of the Board shall have directly or indirectly any pecuniary interest in any contract of the Board or be employed in any manner for compensation by the Board of which he is a member except as clerk or treasurer. No contract shall be binding upon any Board unless it is made or authorized at a regular or special meeting of such board."

Sec. 12910 provides,

"Whoever, holding an office of trust or profit by election or appointment, or as agent, servant, or employee of such officer or of a board of such officers, is interested in a contract for the purchase of property, supplies or fire insurance for the use of the county, township, city, village, Board of Education or a public institution with which he is connected, shall be imprisoned in the penitentiary not less than one year nor more than ten years."

Sec. 12911 provides:

"Whoever, holding an office of trust or profit by election or appointment, or as agent, servant or employee of such officer or Board of such officers, is interested in a contract for the purchase of property, supplies or fire insurance for the use of the county, township, city, village, Board of Education or a public institution with which he is not connected, and the amount of such contract exceeds the sum of $50.00, unless such contract is let on bids duly advertised as provided by law, shall be imprisoned in the penitentiary not less than one year nor more than ten years."

The latter two sections provide penalties for an officer having an interest in a contract and are penal in their nature.

These sections of the General Code have been before the courts a number of times for construction and the office of the Attorney General has rendered numerous opinions relating to them. In an opinon rendered by the office of the Attorney General found in 1927 O. A. G. page 1326, the syllabus reads as follows:

"A Board of Education is prohibited by virtue of §4757 GC from entering into a contract for the purchase of coal with a corporation of which one of the members of the Board is a stockholder, even though such board member has only one share of stock, and the corporation of which he is a stockholder and which is selling the coal is being operated at a loss, such board member if he participated in the making of such contract, would be subject to prosecution under the provisions of §12910 GC."

In the body of the opinion the Attorney General used the following language:

"Certainly the board member would have a direct and substantial interest, though small, in the financial affairs of the corporation of which he is a stockholder. That interest is pecuniary in its nature even though profits have not heretofore been made by the corporation. It no doubt has hopes of making some profit in the future or at least making up the loss which it has already suffered else it would not be in the field for business, and even if it never shows a profit and has no hopes of so doing, each stockholder is pecuniarily interested to the extent of conserving as much of the original capital as possible."

In 1933 O. A. G. Opinion Number 1895, it was held that the Board of Education of a school district containing less than two banks is prohibited by §4757 from entering into a depository contract with a bank of which one or more members of the Board are stockholders or directors since §7607 GC authorizing the creation of a depository does not provide for competitive bidding.

In a case in which a company had a contract for furnishing supplies with a

Board of Education and a member of said board was a stockholder and manager of the contracting party, the Attorney General held in 1933 O. A. G. 1981 that such stockholder and manager did have a pecuniary interest in said contract within the meaning of §4757 GC, and that such pecuniary interest would prevent him from qualifying as a member of said Board of Education as long as he retained the pecuniary interest in the contract. The opinion further stated that the only way the stockholder could qualify would be if he renounced his rights under the contract by selling or disposing of his stock in the company and terminating his relationship with the company as manager. This opinion quotes a decision to the same effect found in 1931 O. A. G. page 1498 in which opinion the Attorney General said, after quoting §4757,

"By reason of the plain terms of the above section it is evident that no member of a Board of Education shall have a pecuniary interest in a contract during the time he is a member of said board. In some instances statutes prohibit the making of a contract by public officials during the term of office and for a designated period thereafter, but the statute under consideration (§4757) states in positive language that no member of the board shall have an interest in any contract of the board."

This opinion related to a member of a Board of Education having a contract to transport pupils.

In 1938 O. A. G. page 1596, it is held that a company whose local manager is also a member of a Board of Education cannot submit sealed bids for contracts to furnish supplies to the Board of Education when competitive bidding on such contract is not required by law, as a contract made under such circumstances comes within the provisions of §4757 and §12910 GC. The Attorney General, after quoting the above statutes, says:

"The code sections in the question employ clear and definite language.

They are, moreover, so drawn as to include by their words practically all officers and types of contracts. In applying these sections this office has been faced with many hard situations. However, where legislative intent is clearly and definitely expressed this office is bound to give effect to it."

In the long list of cases and situations occasioning application of these sections to public contracts made with corporations or firms whose officials and employees are public officials, there has only been one basis upon which the courts have been willing to create an exception and this is in the instance where competitive bidding is required by law.

A Board of Education is not required by any provision of law to require competitive bidding for furnishing coal. See 1933 O. A. G. Opinion 1981; **Gosline v Toledo Board of Education, 11 C. C. (N. S.) 195**, which case is quoted with approval in **State ex Bartholomew v Witt, 30 Oh Ap 414**, and Fahl v Board of Education, 23 N. P. (N. S.) 309. However, even though a Board of Education is not required to have competitive bidding for purchase of coal, there is nothing to prevent such a practice. If competitive bidding is had for the purchase of the coal, the contract when let is subject to the same construction as is a contract entered into without competitive bidding, and the saving clause of §12911 is not applicable.

In the case of **State of Ohio ex rel v Funk, 8 C. D. 782**, the court held that a petition charging a trustee of the gas works of the City of Findlay who was a member of a partnership firm furnishing work and materials to the gas department, said work and materials being paid for from funds in possession of the trustees, charged the defendant with malfeasanse under the sections of the statute then existing.

We now come to the question of whether or not the defendant had a pecuniary interest in the coal contract mentioned in the first ground of the complaint, and the em-

ployment of his minor son as janitor in the second ground of the complaint. The Court feels that the evidence clearly and conclusively shows that the defendant did have a pecuniary interest in the coal contract. A great part of the coal was purchased from the partnership of Leach and Hollberg. They were mining coal to sell on the market and certainly were selling it for a profit. When a partnership sells a product certainly both of the parties have a pecuniary interest in the sale, and since this sale was made to the person furnishing coal to the Board of Education under the contract, of which board Leach was a member, he certainly would have a direct pecuniary interest in the contract. The fact that Leach assisted in weighing, loading, making out slips, and bills, to the township for the coal and also assisted in unloading some of the coal at the schoolhouse, indicates that he had an interest in the matter. The fact that he would not state positively that he made out some of the weigh slips and the bills for the coal tends to show that he was attempting to conceal the interest that he had in the contract. Also, his statement to Patterson when Patterson attempted to pay for coal for his own use "to let the coal go on the schoolhouse hauling until they settled", and the fact that Leach and Hollberg acknowledged $2.00 due to Patterson, shows that Leach was interested in the contract. While Leach did not have the direct contract for the sale of the coal, yet, since the coal was furnished from two mines on land of which he owned an interest as a partner, he would have a pecuniary interest in the sale of the coal much more so than would a shareholder in a corporation.

Counsel for defendant contends that the interest defendant might have would not amount to much. However, the statutes do not require the interest to be great, but merely provide that any pecuniary interest moving directly or indirectly to the officer is sufficient. The penal sections, **12910 and 12911,** leave out the word, "pecuniary". It is not even necessary for the contract to be profitable to the officer. See **State v Moon, 11 Abs 96;** 1927 O. A. G. page 1326.

With reference to the second ground in the complaint it is admitted that the minor son was not emancipated and that he lived at his father's home and did not pay board and room. The earnings of an unemancipated son belong to the father until majority. **47 Oh Ap 344.**

The term "pecuniary interest" is defined in Bouvier's Law Dictionary as "interest—the right of property which a man has in a thing".

In 1923 O. A. G. page 236, the Attorney General in rendering an opinion used the following language,

"The general presumption is that the employment of a minor son of a member of a board of education is such an employment or contract as would be illegal under the provisions of §4757 upon the ground that said parent as a member of the board of education would have a pecuniary interest in said contract."

In discussing this question in the opinion the Attorney General points out that these cases must all be decided on facts peculiar to each one, but that there is a general presumption of pecuniary interest. It was contended by counsel for the defendant that there was no pecuniary interest in this employment because the son did not in fact give any of his money to the father. However, we are faced with the fact that the law is well settled that when a minor son has not been emancipated the father is entitled to his earnings until he reaches the age of majority. The father may not only demand the earnings from the minor son and be entitled thereto, but has a right of action for the same. In the instant case Dallas Leach could demand these earnings at any time and have the absolute right to obtain them. The Court feels that this is an interest in said employment or that it is a right of property which Dallas Leach has in the minor son's

earnings. The Court, therefore, feels that the evidence clearly ██ discloses a pecuniary interest to Dallas Leach in the employment of his minor son as janitor by the Board of Education.

We now come to the question of whether or not the pecuniary interest which Dallas Leach had in the coal contract and in the employment of his minor son as janitor by the Board of Education constitutes a ground for removal from office under §10-1. It may be seen by a review of the above authorities that a company or a firm, the stockholder or member of which is a member of the Board of Education, cannot contract with said Board for furnishing materials for the use of said Board. Also, if the contract is already in existence and a stockholder or member of the firm having the contract is elected a member of the Board, he cannot legally qualify; and by §12910 GC if an officer has an interest in a contract such action on the part of the officer is constituted a crime. Certainly if having an interest in a contract is a violation of law, especially the violation of a criminal statute, it must be considered as the doing of an act which is wholly unlawful and wrongful and, therefore, must constitute malfeasance. It must be borne in mind that this coal contract does not come within the saving clause of §12911 for the reason that it is not necessary to advertise for competitive bidding in the awarding of a coal contract.

Since there was no evidence introduced tending to show the defendant guilty of nonfeasance or misfeasance, the complaint is dismissed as to those allegations.

It is, therefore, the finding of the Court that Dallas Leach had a pecuniary interest in the coal contract mentioned in the first ground of the complaint, and that he had a pecuniary interest in the employment of his minor son as janitor in the second ground of complaint, and that such acts constitute malfeasance.

It is, therefore, the judgment of the Court that by reason of said malfeasance in office as a member of the Board of Education of Washington Township Rural School District, Jackson County, Ohio, said Dallas Leach is thereby guilty of misconduct in office; it is the judgment of the Court that said Dallas Leach forfeit said office as a member of the Board of Education of Washington Township Rural School District, Jackson County, Ohio, with all its emoluments, and that he pay the costs of this case.

An entry may be drawn accordingly.